# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## LAFAYETTE DIVISION

```
WILLIAM C. EVERETT,              )
                                 )
     Plaintiff,                  )
                                 )
     vs.                         )    No. 4:14-CV-21
                                 )
CAROLYN COLVIN,                  )
COMMISSIONER OF                  )
SOCIAL SECURITY,                 )
                                 )
     Defendant,                  )
```

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's final decision denying Social Security Disability Insurance ("SSDI") benefits to Plaintiff, William C. Everett. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On February 11, 2011, Plaintiff, William C. Everett, filed a claim for Social Security Disability benefits. Everett alleged that his disability began November 1, 2010, due to peripheral artery disease, elevated cholesterol, osteoarthritis, herniated

discs, possible type II diabetes, impaired memory, chronic pain, history of aneurysm in left leg, arthritis, and twice broken collar bone. The Social Security Administration denied his initial application and also denied his claim on reconsideration. On August 30, 2012, Plaintiff appeared, represented by counsel, at an administrative hearing before Administrative Law Judge ("ALJ") David R. Bruce. Testimony was provided by Everett and Leonard M. Fisher, a vocational expert. On September 10, 2012, ALJ Bruce issued a decision denying Everett's claims, and finding him not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of unskilled, light level jobs in the national economy.

Plaintiff requested that the Appeals Council review the ALJ's decision, but the request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

## DISCUSSION

### Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or SSI benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

> Step 1: Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

>     Step 2:     Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months?  If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.
>
>     Step 3:     Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1?  If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.
>
>     Step 4:     Is the claimant able to perform his past relevant work?  If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.
>
>     Step 5:     Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

In this case, at step two, the ALJ found that Everett suffers from the following severe impairments: peripheral artery disease, degenerative disk [sic.] disease of the lumbar and cervical spines, arthritis of the left knee, scoliosis, and obesity. (Tr. 25.) At step three, the ALJ evaluated the claim under the listings 1.04, Disorders of the Spine, 1.02, Major Dysfunction of a Joint and 4.12, Peripheral Arterial Disease, and found that no listings were met. (Tr. 26.) The ALJ's finding on residual functional capacity was that "the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR

404.1567(b)." (Tr. 26.) Based on Everett's RFC, the ALJ found at step four that Everett is not capable of performing his past relevant work as a construction worker. (Tr. 31.) However, at step five, the ALJ did find there are jobs that exist in significant numbers in the national economy that Everett can perform. Everett believes that the ALJ committed several errors requiring reversal.

Additional Evidence Originating After the ALJ's Decision

Plaintiff submitted additional evidence to the Appeals Council after the Administrative Law Judge had issued his September 10, 2012 decision. The Appeals Council listed the seven pieces of evidence, and its reasoning for finding it did not affect the ALJ's decision. Then, it returned the evidence to Plaintiff and stated it was available to Plaintiff "in your electronic file." (Tr. 2.) Although the CFR says the Appeals Council "will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application," 20 C.F.R. §§ 404.976, 416.1476, there is also a HALLEX that provides that a copy of this evidence should be included in the Administrative Record. HALLEX I-3-5-20(S.S.A.), 1993 WL 643143, at *1. In the best interest of justice, and so that this Court was able to review the Appeals Council's exclusion of this evidence, this Court ordered the Commissioner of Social

5

Security to supplement the record. (DE #33.) Social Security filed the supplemental record on December 17, 2014 (DE #38).

In the instant motion, Everett argues the Appeals Council erred in evaluating what he contends is new and material evidence. The regulations require the Appeals Council to evaluate "new and material evidence" in determining whether a case qualifies for review. 20 C.F.R. §§ 404.970(b), 416.1470. The pertinent regulation is 20 C.F.R. § 404.970(b), which provides as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative judge hearing decision. It will then review the case if it finds the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Review of the question whether the Council made an error of law in applying this regulation is de novo. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) (quoting *Eads v. Secretary of the Dep't of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)). In the absence of any such error, the Council's decision whether to review is discretionary and unreviewable. *Id.* (citing *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1992)).

When the Appeals Council considers additional evidence, the regulations require that the evidence is new, material, and related

to the period on or before the date of the ALJ decision. HALLEX I-3-3-6(B) (S.S.A.), 1993 WL 643129. This means the evidence is:

    1.    Not part of the claim(s) record as of the date of the ALJ decision;

    2.    Relevant, i.e., involves or is directly related to the issues adjudicated by the ALJ; and

    3.    Relates to the period on or before the date of the ALJ decision, meaning it is: (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.

(*Id.*) Here, the Notice from the Appeals Council did not refuse to consider Everett's additional materials - indeed, it indicates that it considered the supplemental evidence, but that the "new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 10, 2012." (Tr. 2.) This court has reviewed the supplemental evidence (DE #38), and agrees that it is medical evidence dated after September 10, 2012 (the date of the ALJ decision), which does not fill an evidentiary gap, but rather is more of the same type of evidence already before the ALJ. As such, this Court believes the Appeals Councils acted within its discretion, and its decision regarding the additional medical records will not be disturbed by this Court. *Perkins*, 107 F.3d at 1294.

<u>The Weight Given To Everett's Treating Physician</u>

7

The ALJ determined Everett was capable of "light level work" for his residual functional capacity (RFC). Everett claims the ALJ erred in this conclusion and in evaluating the opinion of his treating physician, Dr. Collicott. Specifically, Everett argues the ALJ improperly discounted Dr. Collicott's restriction on lifting. The ALJ found:

> As for the opinion evidence, I grant little weight to the opinions of Dr. Collicott, who wrote a note that restricted the claimant to lifting no more than 10 pounds for the next six months due to back pain (Ex. 21F); and who wrote another note, stating that the claimant could lift no more than 10 pounds, and that this was a permanent restriction (Ex. 24F). I find no support in the records from Dr. Collicott (Ex. 17F, Ex. 20F, and Ex. 23F) to support these restrictions. Additionally, these restrictions are not supported by the claimant's statements in the Function Report (Ex. 4E).

(Tr. 30.)

Social Security Ruling ("SSR") 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is "well supported" and "not inconsistent with other substantial evidence in the case record." Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

8

If the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the ALJ must apply the following factors to determine the proper weight to give the opinion:

> (1) the length of the treatment relationship and frequency of examination;
>
> (2) the nature and extent of the treatment relationship;
>
> (3) how much supporting evidence is provided;
>
> (4) the consistency between the opinion and the record as a whole;
>
> (5) whether the treating physician is a specialist;
>
> (6) any other factors brought to the attention of the Commissioner.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d); *see Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). It is reversible error for an ALJ to discount the medical opinion of a treating physician without applying this legal standard and for further failing to support the decision with substantial evidence. *Moss*, 555 F.3d at 561; *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding the ALJ's rejection of a treating physician's mental residual functional capacity questionnaire was not substantially supported).

Dr. Collicott with the WeCare Clinic started treating Everett on February 18, 2011, when a set of cervical MRIs were performed on his order. (Tr. 243-44.) The findings at C6-7 were "circumferential

9

bulging" and a "large right paramidline cranially dissecting extrusion which produces mild compression of the right side of the cord, moderate effacement of right lateral recess, and moderate right lateral stenosis" and "[i]mpingement on the right C7 root is definite." (Tr. 243.) Additionally, at C5-6, the "bulging and osteophytes produce mild-to-moderate left lateral stenosis." (*Id.*) Additionally, there was circumferential bulging, osteophytes, and a right posterolateral herniation at C5-6. (*Id.*) Impingement of the C6 nerve root was definite with moderate to severe right lateral stenosis. (*Id.*) There was severe flattening of the cord. Additionally, the "mild bulging" produced "mild left lateral stenosis" at C3-4. (*Id.*) Dr. Collicott sent Everett to physical therapy and Dr. Collicott was the treating physician while Everett attended physical therapy. On April 5, 2011, Plaintiff was sent for consultative evaluation to Blackbird Clinical Services, and seen by Dr. Potts. (Tr. 378.) Dr. Potts' medical source statement stated Everett was able to stand or walk for at least 2 hours; sit for at least 2 hours; lift or carry less than 10 pounds frequently; lift or carry more than 10 pounds occasionally; and handle objects for at least 2 hours. (Tr. 380-81.) Everett was evaluated by Dr. Collicott on April 21, 2011 and diagnosed with "cellulitis and abscess of trunk." (Tr. 433.) At a July 2011 visit, a different doctor at the WeCare Clinic noted "pt following up on PT and cervical traction, pt states that PT and cervical traction didn't help at all, we discussed

options and right now we have tried everything and would have to send him back to the neurogurgeon for some possible epidural steroid injections, pt doesn't want to try that at this time." (Tr. 427.) In November 2011, Everett complained of pain behind his right knee, and a different doctor at the WeCare Clinic encouraged Everett to make an appointment with a vascular surgeon. (Tr. 421.) In February 2012, Dr. Collicott noted "2+ ankle edema." (Tr. 468.) On June 14, 2012, Dr. Collicott issued a work restriction: "no lifting more than 10 lb for 6 months due to back pain." (Tr. 517.) Another round of MRIs showed at L3-4: "[s]ubtle loss of disc height, subtle anterolisthesis and circumferential bulging disc annulus . . . [t]here is facet joint osteoarthrosis with thickening of the facet capsules and ligamenta flava, somewhat worse on the right. Thecal sac is deformed and mildly constricted but there is no neural impingement." (Tr. 519.) An MRI Thoracic spine showed "[a] mild right midthoracic scoliosis is present." (Tr. 518.) In August 2012, Dr. Collicott issued another work restriction stating "chronic back pain no lifting more than 10 lb. Permanent Restriction." (Tr. 533.)

The ALJ said he would "grant little weight" to these opinions of Dr. Collicott who wrote the note about the weight restrictions because he "finds no support in the records from Dr. Collicott [] to support these restrictions. Additionally, these restrictions are not supported by the claimant's statements in the Function Report (Ex. 4E)." (Tr. 30.) The ALJ has an obligation to annunciate his opinion

11

in such a manner that meaningful review is possible. *Bradley v. Barnhart*, 175 Fed. Appx. 87, 90 (7th Cir. 2006)("the ALJ must at least minimally articulate his analysis with enough detail and clarity to permit meaningful appellate review."). Here, the ALJ's cursory reasons are simply insufficient to create the sort of logical bridge between the evidence and his conclusion that is required. *See Phillips v. Astrue*, 413 Fed. Appx. 878, 885 (7th Cir. 2010); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)(An ALJ must "build an accurate and logical bridge from the evidence to his conclusion."). That Dr. Collicott's opinion is not supported by the record, without further explanation, is simply too vague to allow meaningful appellate review, especially given the record before this Court, which seems replete with medical evidence, including MRI results, that *are* consistent with Dr. Collicott's opinions.

Additionally, the ALJ stated Dr. Collicott's lifting restriction was not "supported by the claimant's statements in the Function Report (Ex. 4E)." (Tr. 30.) To the contrary, this Court has reviewed the Function Report and does find statements supporting Everett's difficulties lifting. Exhibit 4E indicates Everett has "shoulder pain" (Tr. 186), that "[p]utting things over head is painful on shoulder" (Tr. 187), that at the store his "wife does the majority of the lifting" (Tr. 189), "[h]e can't reach above chest high without pain", "he has chronic pain in his knees, legs, neck, back and shoulders" (Tr. 193), "[h]e is very cautious in carrying

12

with his right hand as he can not manage weight" (*Id.*), and "[h]e can not lift a gallon of milk with his arm unless assisted by his left arm." (*Id.*) As such, this Court believes that Dr. Collicott's lifting restriction was indeed supported by statements made by Everett in the Function Report.

Finally, even if Dr. Collicott's opinion was inconsistent with his own treatment records or not well supported by other substantial evidence, the ALJ did not consider all of the factors set forth in 20 C.F.R. §§ 404.1527(a)-(d) and 416.927(a)-(d) in determining the proper weight to give to his opinion. Specifically, the ALJ did not discuss the length of treatment, frequency of examination, or the nature and extent of the treatment relationship between Everett and Dr. Collicott. As explained by the Seventh Circuit, failure to address these factors constitutes reversible error. *Moss*, 555 F.3d at 561; *Punzio*, 630 F.3d at 710. Given the ALJ's finding that Everett could perform the full range of light work[1] it is reasonably likely that the RFC determination will be different when Dr. Collicott's opinion is properly considered. Thus, this case must be remanded so the treating physician's opinions may be properly addressed.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

13

Credibility Determination

Everett also claims that the ALJ failed to properly evaluate the credibility of his testimony because he failed to properly question Everett about issues of non-compliance or attempts to comply with treatment. Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005). Instead, the ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit Court of Appeals has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or

14

that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003). Here, the ALJ found:

> The claimant has a history of being noncompliant with his medications. He has refused treatment modalities like epidural steroid injections. He has been advised to manage his diet by avoiding high-fat and high-sugar foods, but appears non-compliant with those recommendations. The claimant also continues to smoke cigarettes, despite repeated admonitions to quit from his healthcare providers. Based upon this evidence, I find that the allegations of the claimant are only partially credible.

(Tr. 30.)

"In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (citing SSR 96-7p). "However, the ALJ 'must not draw any inferences' about a claimant's condition from his failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Id.* Moreover, it is well settled that an:

> ALJ should not [rely on] smoking or weight gain when assessing [] credibility. The Seventh Circuit has held that the addictiveness of smoking makes non-compliance with a doctor's advice to stop smoking an unreliable basis on which to rest a credibility determination. The addictiveness of smoking could cause smokers to irrationally prioritize the purchase of cigarettes over the purchase of medications. Weight gain, like smoking, may be similarly difficult to control so is also an unreliable basis on which to rest a credibility determination.

*Ellis v. Barnhart*, 384 F.Supp. 2d 1195, 1203 (N.D. Ill. 2005) (citing *Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000)). This Court does find that the ALJ should not have considered Everett's weight, his lack of eating vegetables, or his smoking in assessing his credibility, nor should he have considered the noncompliance with medications or refusal of epidural steroid injections without first seeking explanations from Everett.

However, this does not end the inquiry as to whether the ALJ properly assessed Everett's credibility. The ALJ did not rely

16

solely on Everett's noncompliance in finding his testimony "only partially credible." (Tr. 30.)  The ALJ also considered what he categorized as a "relatively full range of activities of daily living" including that Everett could drive his wife to work every day, drove himself to the hearing, washes dishes (with taking brakes), uses a push lawn mower (with taking breaks), can go to the grocery store if accompanied, and does not use a cane. (*Id.*)  The ALJ also relied upon the medical evidence. (Tr. 27-29.)  Because this case is already being remanded, this Court need not determine whether it should uphold the ALJ's credibility determination.  The ALJ is reminded that on remand, in determining Everett's credibility, it should not consider Everett's weight or smoking.  Nor should the ALJ consider noncompliance with medications or refusal of epidural steroid injections without first seeking explanations from Everett.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

| | |
|---|---|
| **DATED:   June 2, 2015** | /s/ RUDY LOZANO, Judge<br>**United States District Court** |